STATE of Alaska, Appellant,

v.

Harold OSBORNE and Agnes Osborne, Appellees.

No. 4385.

Supreme Court of Alaska.

March 7, 1980.

Thomas R. Wickwire, Asst. Atty. Gen. and Avrum M. Gross, Atty. Gen., Juneau, for appellant.

James H. Cannon, Rice, Hoppner, Ingraham & Brown, Fairbanks, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

The question in this case is whether a house builder's employee can recover back wages directly against the home buyers under a theory that the employee was a third party beneficiary to a contract between the builder and the buyers. The district court directed a verdict for the home buyers, the superior court agreed, and we affirm.

Harold Osborne contracted with James Handy to build a house for $43,000.00. The First National Bank of Anchorage provided a construction loan for $40,000.00. The money from the bank was paid into a checking account belonging to Agnes Osborne, Harold's wife. Disbursements from the bank were in amounts equal to the bills presented by Handy to the Osbornes. The Osbornes in turn wrote checks to Handy.

In November, when the house was about one-third finished, Handy presented a shoebox full of bills, many of them overdue, to Osborne. The amount of the bills would have brought the total cost of the house, as it then stood, to approximately $40,000.00. At the bank's suggestion, the Osbornes put $10,000.00 of their own money into the construction checking account, and payments were disbursed as before. The Osbornes agreed with Handy that the house had to be finished by December 8. Handy continued at all times to be responsible for buying the necessary materials and hiring workers.

Handy failed to complete the house by the December 8 deadline, and the Osbornes, who had sold their other home, were forced to move in with friends. At a meeting between Handy, the Osbornes and a representative from the bank, Handy gave assurances that he had all the supplies he needed and he could finish the job in one week's time if he had an advance of $1,500.00. Handy was given the money, but again he failed to perform. At a second meeting with the Osbornes and the bank in late December, Handy was told that if he completed the house in three days, he would be paid $3,500.00. He failed to perform, and the Osbornes terminated the contract.

At the time, Handy owed Conrad Hancke, who had been working for Handy as a carpenter, $1,600.00. Handy went bankrupt, Hancke assigned his wage claim to the state under the authority of AS 23.05.220,[1] and the state in turn filed a lien on the Osbornes' new house. Hancke ultimately recovered $600.00 from Handy, but through an apparent oversight, the state failed to renew the lien on the Osbornes' property.[2]

---

1. AS 23.05.220(a) provides:

    The department may take an assignment of (1) a wage claim and an incidental expense account and an advance . . . .

2. AS 34.35.050 creates a right to place a lien on property or materials furnished "for the construction of . . . a building . . . ." AS 34.35.080(a)(2) allows for extending a lien claim beyond six months after recording of an

The state has now brought, this action on Hancke's behalf to recover the remaining $1,000.00 owed him.

Hancke and the state have no cause of action against the Osbornes. First, they failed to demonstrate that Hancke was a third party beneficiary of a contract, and, second, assuming that there was such a contract, the Osbornes had a valid defense against it.

Before a third party right in a contract will be recognized, the parties to the contract must intend that at least one purpose of the contract is to benefit a third party. *White v. Alaska Insurance Guaranty Association*, 592 P.2d 367, 369 (Alaska 1979); *Century Insurance Agency v. City Commerce Corp.*, 396 P.2d 80, 82 (Alaska 1964). Ordinarily, only the promisee's (Handy's) motives are relevant. 4 A. Corbin, Corbin on Contracts § 776 (1951).[3] It does not seem possible that Handy negotiated a contract to build a house so that he could confer a benefit on his employees any more than he intended to benefit building suppliers in Fairbanks. Furthermore, at the time the contract was negotiated, there was no evidence that Handy owed Hancke anything, so that some obligation could be

inferred, nor was there any indication conveyed to the Osbornes that Handy intended to benefit Hancke.

Even assuming that there was a valid third party contract, the Osbornes had no duty of performance. A suit by a third party beneficiary is a derivative action. In asserting his rights against the Osbornes, Hancke stood in the shoes of Handy. Restatement (Second) of Contracts § 140 (Tent. Draft 1973). It is clear on the facts of this case that Handy had a duty of performance that was a condition precedent to any duty on the part of the Osbornes to pay him. Handy failed to perform his part of the bargain, consequently, the Osbornes' duty of counter performance never matured. The Osbornes may successfully assert this defense in an action brought by Hancke.[4]

The judgment of the superior court is AFFIRMED.[5]

---

extension notice "in the same recording office within the original six month period  .  .  .."

**3.** The reason for this rule is explained in an example given by Corbin. 4 A. Corbin, Corbin on Contracts § 776 at 16–18 (1951). If *B* sells his house to *A*, *A* would ordinarily not care whether he pays the purchase price to *B* or a third party, *C.* Furthermore, if *B* directed *A* to pay the purchase price to *C*, *A* would not be concerned whether the reason for this third party payment was to satisfy a debt owing to *C* by *A*, or to make a gift. The Osbornes are in

the position of *A*. Their intention was to pay a specified amount for a completed house regardless of who was paid or for what reason.

**4.** We note that the time and expense devoted to this litigation could have been avoided entirely had the state exercised diligence in renewing Hancke's lien.

**5.** We find no merit in the appellant's additional claim that the trial court improperly limited direct examination of the owner.