Steven HOWELL, Appellant,

v.

**KETCHIKAN PULP COMPANY,
Appellee.**

No. S–7137.

Supreme Court of Alaska.

Aug. 15, 1997.

J. Michael Robbins, Law Offices of J. Michael Robbins, Anchorage, for Appellant.

Brewster H. Jamieson and William A. Earnhart, Lane Powell Spears Lubersky, Anchorage, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. *INTRODUCTION*

Steven Howell appeals the superior court's summary judgment for Ketchikan Pulp Company (KPC) on Howell's breach of contract and breach of warranty claims. We affirm.

## II. *FACTS AND PROCEEDINGS*

Howell was employed as a pipefitter by Qualified Contractors, Inc. (QCI). QCI, through its parent company General Electric (GE), had a contract with KPC to repair KPC's boilers and other machines. While repairing a KPC boiler, Howell was injured by the explosion of another boiler in KPC's plant. He was struck in the back with jagged metal, inhaled noxious gases, and lost consciousness.[1]

Howell did not have a contract with KPC; he brought his contract claim as a third-party beneficiary to the contract between KPC and GE/QCI. The only written contracts applicable to Howell's employment repairing KPC's boilers were Requisition Purchase Orders and a form MK 156. Howell argues that the indemnity provision of the MK 156 gives the contractor's employees a third-party beneficiary claim against KPC. The MK 156 states:

1. Contractor shall protect and save harmless, indemnify and defend Company and its property against and from all claims for property damage or personal injury (including death) and against and from all claims, including lien claims for material and labor furnished caused by Contractor's (including Contractor's employees and agents) negligent acts or omissions, breach of warranty, breach of contract, similar fault or intentional misconduct in the performance of services hereunder; such indemnity to include full and reasonable attorney's fees and costs actually incurred by Company in its defense or actually incurred by Company in the enforcement of any terms of this contract. To the extent the liability exceeds the minimum limit set forth in 2.b below, Company agrees to protect, save harmless, indemnify and defend Contractor, its agents and employees from and against all loss, injury, damage and legal liability including attorneys [sic] fees and other costs of defense arising out of any negligent act of Company, its agents and employees and not caused

---

**1.** KPC accepts this fact for the purposes of its initial Motion for Summary Judgment and this appeal only.

in whole or in part by Contractor, its agents or employees.

2. Contractor will insure and cause its insurer to provide proof of insurance to Company with the following minimum limits:

. . . .

b. Public liability insurance in the amount of One Million Dollars (Combined Single Limit) ($1,000,000) per occurrence for property damage; One Million Dollars (Combined Single Limit) ($1,000,000) for each occurrence for bodily/injury or death sustained by anyone including Contractor's employees during the course of, or on the site of, Contractor's contract work herein at Company's Alaska property.

The superior court granted KPC summary judgment on Howell's third-party beneficiary claim, concluding that the contract between KPC and GE/QCI was not intended to benefit Howell. It granted KPC summary judgment on the breach of warranty claim, concluding that Howell's claim arose in tort and therefore it was barred by the two-year statute of limitations for tort claims.

## III. *DISCUSSION*

### A. *Standard of Review*

■ We review the superior court's grant of summary judgment *de novo. Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995). We will affirm summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *In re Estate of Evans*, 901 P.2d 1138, 1140 (Alaska 1995). When making this determination, we draw all reasonable inferences in favor of the non-moving party. *Bishop v. Municipality of Anchorage*, 899 P.2d 149, 153 (1995).

### B. *Third-Party Beneficiary Claim*

■ To bestow third-party beneficiary stature on GE/QCI employees, KPC and GE/QCI must have intended their contract to benefit the employees. *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 154 (Alaska 1984); *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980). The motives of the parties, including those of the promisee, are determinative. *Osborne*, 607 P.2d at 371.

■ Howell relies on cases involving contracts between employers and unions to support his argument that he is a third-party beneficiary of the contract between GE/QCI and KPC. *See Goldies, Inc. v. Alaska Hotel and Restaurant Employees Health and Welfare Fund*, 622 P.2d 979 (Alaska 1981); *Continental Ins. Co. v. Bussell*, 498 P.2d 706 (Alaska 1972). These cases are distinguishable from the present case. Unions are created for the benefit of employees. By contrast, GE/QCI and KPC do not exist for the benefit of the GE/QCI employees, for whom any benefit of the contract between GE/QCI and KPC is incidental to that contract. However, GE/QCI and KPC do have an interest in allocating liability to protect themselves from potential lawsuits brought by employees as a result of injury on the job. That is the issue addressed by the MK 156.

In *Osborne*, we stated that a house builder's employee had no third-party right arising out of the contract between the house builder and buyers, because there was no evidence that the motive of the builder and buyers in entering the contract was to benefit the employee. 607 P.2d at 371. The reasoning of *Osborne* applies to this case. The superior court stated:

In this case it would be impossible for a reasonable jury to conclude that one of the purposes of the contract between General Electric and Ketchikan Public Utilities [sic] was to benefit Steven Howell. . . . The MK 156 and associated documents (Exhibits to defendant's reply of February 1, 1995) simply show efforts to reallocate liability between the two contracting parties—for their benefit—not that of third parties such as plaintiff.

Although language in the MK 156 provides for liability coverage for injury sustained by GE/QCI employees, no evidence exists that this language was motivated by a desire on the part of the contracting parties to benefit the employees. Rather, the clause protects the contracting parties by allocating liability between them. Howell has made no showing

that the contract was intended for any other purpose.

### C. Breach of Warranty Claim

 Generally, the nature of the injury determines whether the complaint sounds in contract or in tort. *Breck v. Moore,* 910 P.2d 599, 603 (Alaska 1996). The personal injuries Howell sustained as a result of the explosion of a boiler on KPC's premises typically are embodied in a tort claim. Determining the nature of the claim also determines the applicable statute of limitations period. The statute of limitations is six years for a contract claim and two years for a tort claim involving personal injuries. AS 09.10.050; AS 09.10.070. Howell's tort claim is subject to the two-year statute of limitations. Howell's injury occurred in 1991. He filed his complaint in 1994. The statute of limitations has run.[2]

### IV. CONCLUSION

The judgment of the superior court, granting summary judgment for KPC on Howell's third-party beneficiary and breach of warranty claims, is AFFIRMED.

RABINOWITZ, J., not participating.

---

**2.** Were we to reach Howell's breach of warranty claim on its merits, it would fail. Howell bases this claim on the Uniform Commercial Code (UCC). The UCC provisions applicable to breach of warranty claims are limited to cases involving the sale of goods. AS 45.02.101–106. A breach of warranty occurs when the seller tenders the defective goods to the buyer. AS 45.02.725(b).

"A 'sale' consists in the passing of title from the seller to the buyer for a price." AS 45.02.106(a).

Howell alleges no facts concerning the sale, purchase, tender, or title of the boiler. Nor does he present any evidence concerning the manufacturer or purchaser of the boiler. Since there is no sale of goods, Howell's UCC claim fails.