**Joseph MILLER, Plaintiff,**

v.

**CORRECTIONS CORPORATION OF AMERICA, Defendant.**

**No. A03–266CVJWS.**

United States District Court, D. Alaska.

June 6, 2005.

ORDER FROM CHAMBERS [RE: (1) Oral Argument Set; (2) Motion at docket 46—Preliminary Disposition; (3) Motion at docket 52—Final Disposition]

SEDWICK, District Judge.

## I. MOTIONS PRESENTED; ARGUMENT SET

At docket 46, defendant Corrections Corporation of America moves for summary judgment. This motion is opposed at docket 51. At docket 52, defendant moves to strike certain exhibits submitted by plaintiff in his opposition to the motion for summary judgment. This motion is opposed at docket 53. Oral argument has been requested on the motion for summary judgment. The court will hear oral argument on the motion for summary judgment only at 8:00 AM on June 17, 2005, in Courtroom 3. Counsel not resident in Anchorage may make arrangements to participate telephonically by contacting the court's case manager, Ms. Pam Richter[*] at least two business days in advance. Each side will be limited to 15 minutes.

## II. NATURE OF THIS ORDER

This order sets out a preliminary decision with respect to the motion for summary judgment at docket 46. This order sets out the court's final disposition of the motion to strike at docket 52.

After hearing oral argument, the court may adopt some, all or none of the discussion in this order as the rationale for final disposition of the motion at docket 46. This order does NOT authorize the filing of any further papers. It is hoped that it will assist the parties to prepare for oral argument on the motion at docket 46.

## III. BACKGROUND

Defendant and the State of Alaska had a contract which provided for the housing of Alaskan prisoners in Arizona facilities run by defendant. Plaintiff Joseph Miller was an Alaskan inmate housed in an Arizona prison run by defendant. While in prison, plaintiff underwent a routine medical examination and was advised that he needed to have a wisdom tooth extracted. On October 8, 2001, plaintiff was transported to Dr. George Deeb's office in Tucson, Arizona, for the extraction. During the extraction, plaintiff's jaw was broken, and he suffered nerve damage. The nerve damage has affected plaintiff's ability to speak. Plaintiff also continues to suffer pain and paresthesia.

Plaintiff commenced this action in state court on October 7, 2003. Plaintiff's complaint was subsequently removed to this court on the basis of diversity jurisdiction.[1] Plaintiff's complaint alleges two causes of action. The first claim for relief is entitled "Failure and Refusal to Provide Appropriate and Necessary Medical and Therapeutic Specialized Care with Reasonable Promptitude."[2] In this claim, plaintiff alleges that defendant "failed, refused and neglected to provide [him] with assistance of a trained speech therapist within a reasonable time" after his oral surgery.[3] Plaintiff also alleges that defendant "failed, refused and neglected to allow [him] within a reasonable time to see a neurologist, despite an early recommendation for that consultation by" a prison physician.[4] The parties disagree over whether plaintiff's first claim of relief asserts a medical malpractice claim or a negligence claim. Plaintiff's second claim for relief is entitled "Plaintiff as Third Party Beneficiary of the Contract Between the Defendants."[5] In this claim, plaintiff alleges that he is a third-party beneficiary to the contract between defendant and the State of Alaska[6] and that defendant breached "its contractual duty to provide adequate and appropriate medical care" to plaintiff while he was incarcerated in Arizona.[7]

Defendant previously moved for summary judgment on both of plaintiff's claims. The court denied defendant's original motion for summary judgment because defendant failed to brief the choice-of-law issue raised by the facts of this case.[8] Defendant was given leave to file a renewed motion for summary judgment. Defendant's renewed motion for summary judgment is now ripe for disposition as is defendant's motion to strike.

## IV. MOTION TO STRIKE

Defendant moves to strike certain exhibits submitted by plaintiff in opposition to defendant's motion for summary judgment.[9] Defendant's motion to strike

1. Doc. 1 at 3.
2. Exh. 1 at 3, doc. 4.
3. Id. at 4, ¶ 10.
4. Id. at ¶ 11.
5. Id. at 5.
6. Id. at 5, ¶ 15.
7. Id. at ¶ 16.
8. Doc. 45.
9. These exhibits are attached to plaintiff's opposition to defendant's first motion for summary judgment at docket 40. Plaintiff incorporated these exhibits into his opposition to defendant's renewed motion for summary judgment rather than refiling them.

is a one-page document, in which defendant makes cursory one-sentence arguments with no citation to the rules of evidence on which defendant relies, although defendant does provide some citations to the Federal Rules of Civil Procedure. The court would be tempted to deny defendant's motion to strike for failure to comply with Rule 7.1(a)(2), District of Alaska Local Rules,[10] except that "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment."[11] The court must consider defendant's motion to strike, despite its deficiencies.

■ Defendant first complains that plaintiff failed to file a separate statement of facts as is required by Rule 56, Federal Rules of Civil Procedure. As plaintiff is quick to point out, Rule 56 does not require a separate statement of facts. The court presumes that the confusion over the separate statement of facts here is the result of defendant having counsel from Arizona. The local rules for the District of Arizona do require that a separate statement of facts be submitted with a motion for summary judgment.[12] The local rules for the District of Alaska have no similar requirement.

Defendant next objects to the admissibility of three of plaintiff's exhibits submitted in opposition to the motion for summary judgment: 1) plaintiff's affidavit,[13] 2) an outpatient speech evaluation by Julie Gose,[14] and 3) a letter dated April 2, 2004, from Darlene K. Batchelder.[15]

## A. Plaintiff's Affidavit

Defendant moves to strike plaintiff's affidavit because it lacks foundation and contains multiple hearsay comments. In its motion, defendant fails to identify the specific comments it believes are hearsay and fails to identify which portions of plaintiff's affidavit it believes lack foundation. Plaintiff responds that he does not understand what the basis is for defendant's bald assertions and contends that the information in his affidavit is based on his personal knowledge, as required by Rule 56(e), which provides that "[s]upporting and opposing affidavits shall be made on personal knowledge. . . ."

■ In its reply, defendant finally refers to the specific paragraphs of plaintiff's affidavit which it seeks to strike. First, defendant objects to paragraph 5, which reads: "During the course of [the oral] surgery, I sustained nerve damage. This damage is permanent and includes a severe speech impediment, along with paresthesia and pain."[16] Defendant characterizes this as a "self-diagnosis" and argues that plaintiff, who does not profess to having a medical background, is not competent to testify about the extent of his injuries sustained during his oral surgery and about whether his injuries are permanent.

Plaintiff is competent to testify about the effects of his injury, i.e., the speech impediment, pain, and paresthesia, because such facts are based on his personal knowledge. Plaintiff is not competent to testify about the cause of his injury or

---

**10.** District of Alaska Local Rule 7.1(a)(2) provides that any motion must include or be accompanied by "[a] brief statement of the points and authorities relevant to the relief requested."

**11.** *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir.2002).

**12.** *See* District of Arizona Local Rule 56.1(a).

**13.** Exh. A, doc. 40.

**14.** Exh. F, doc. 40.

**15.** Exh. D, doc. 40.

**16.** Exh. A at 2, ¶ 5, doc. 40.

whether his injury is permanent. These portions of paragraph 5 are stricken.

■ Defendant next seeks to strike paragraph 7, which reads:

Any requests for treatment had to be approved by the State of Alaska, and, in fact, a representative from the state of Alaska, Mel Henry, visited me in Arizona when I was incarcerated, twice. At the first visit he approved speech therapy. At the next visit, approximately 3 to 4 months later, Mr. Henry asked me how the speech therapy was going. I had to inform him that I had not been permitted to see a speech therapist, yet, by CADC.[17]

Defendant argues that this paragraph contains hearsay because it refers to statements made by Alaska Department of Corrections personnel.

Any questions asked or statements made by Henry would be inadmissible hearsay and are stricken. Plaintiff may, however, recount what he told Henry and the fact that Henry visited him since those are facts based on plaintiff's personal knowledge.

■ Defendant next objects to paragraph 8, which reads: "I was not permitted to see a speech therapist, by CADC, until approximately one year after the surgery."[18] Defendant complains that the paragraph does not contain details about to whom plaintiff made the requests or about when the requests were made.

The lack of detail does not affect the admissibility of paragraph 8. This is a statement based on plaintiff's personal knowledge, and it is admissible.

■ Lastly, defendant seeks to strike paragraph 10, which reads:

CADC, its agents, servants and employees, failed, refused and neglected to allow me, within a reasonable time, to see a neurologist, despite an early recommendation for that consultation by a physician at CADC. This opportunity to see a neurologist, too, was not granted until approximately one year after the oral surgery was performed.[19]

Defendant argues that this paragraph should be stricken because it is a legal conclusion. To some extent, plaintiff does appear to be making legal conclusions here. Plaintiff uses words such as "neglect" and "within a reasonable time," which are words that may have legal connotations. Plaintiff may testify about facts within his personal knowledge, but cannot make legal conclusions. The portion of the paragraph in which plaintiff testifies that he did not get to see a neurologist until approximately a year after his surgery is admissible. The portion of the paragraph in which plaintiff testifies that this was "neglect" on the part of defendant and was not done within a "reasonable time" is not admissible.

### B. Gose Exhibit

This exhibit is an outpatient speech language evaluation prepared by Julie Gose, a bilingual speech-language pathologist, who evaluated plaintiff on July 18, 2002. Defendant moves to strike this exhibit because it contains inadmissible hearsay, is not in compliance with Rule 26(a)(2)(B), Federal Rules of Civil Procedure, and lacks foundation.

■ Defendant argues that this exhibit contains inadmissible hearsay. Plaintiff argues that Gose's evaluation would be admissible under Rule 803(6), Federal Rules of Evidence, which provides an ex-

17. *Id.* 2–3, ¶ 7.

18. *Id.* at 3, ¶ 8.

19. *Id.* at 3, ¶ 10.

ception to the hearsay rule for records of regularly conducted activities.

■ In order for evidence to be admissible under the Rule 803(6) exception, the party proffering the evidence must establish through a competent witness that

> (1) the record [was] made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record [was] kept in the course of a regularly conducted business activity.[20]

Plaintiff has not met either of these two requirements. All plaintiff has done is assert that the exhibit falls under the Rule 803(6) exception. The evaluation contains hearsay, as defendant contends. But, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."[21] Gose is listed on plaintiff's witness list and may testify at trial. She could testify about the contents of the evaluation exhibit at that time based on her personal knowledge. As long as the contents of the exhibit could be presented in an admissible form at trial, the court can consider the contents of the exhibit on motion for summary judgment.[22]

■ Defendant next argues that this exhibit does not comply with Rule 26(a)(2)(B), which governs the disclosure of expert testimony. Despite plaintiff's contention to the contrary, Gose is listed on his expert witness list,[23] and plaintiff does have an obligation to comply with Rule 26(a)(2)(B) in connection with Gose's testimony. Defendant does not explain how this exhibit fails to comply with Rule 26(a)(2)(B). All defendant states is that it does not comply.

Rule 26(a)(2)(B) requires that the disclosure of an expert witness be accompanied by an expert report prepared and signed by the witness.

> The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.[24]

The court has no way of knowing whether Gose has submitted the required expert report. If the evaluation is all that has been submitted, it plainly fails to qualify as an "expert report." But, the evaluation could be part of Gose's expert report, if she has submitted a report, because an expert report can include exhibits used to support the opinions expressed in the report. But, even if plaintiff has failed to comply with Rule 26(a)(2)(B) because no expert report has been submitted, that does not mean that Gose's testimony or the contents of this particular exhibit are necessarily inadmissible.

Rule 37(c)(1), Federal Rules of Civil Procedure, provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or

**20.** *United States v. Arias–Villanueva*, 998 F.2d 1491, 1503 (9th Cir.1993).

**21.** *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003).

**22.** *Id.*

**23.** Doc. 19 at 2.

**24.** Fed R. Civ. P. 26(a)(2)(B).

information not so disclosed." If plaintiff has not complied with Rule 26(a)(2)(B) but can show a substantial justification for non-compliance and that the failure to comply was harmless, Gose's testimony could still be admissible at trial. With what is currently before it, the court concludes that the contents of this exhibit *could be* presented in an admissible form at trial. The court will consider the contents of this exhibit on motion for summary judgment. That does mean, though, that the court would admit this exhibit, or Gose's testimony, at trial.

 Lastly, defendant contends that the Gose evaluation lacks foundation because it was not made with a reasonable degree of medical probability and because Gose is not qualified to render neurological opinions regarding causation. This exhibit appears to be the written record of Gose's evaluation of plaintiff. There is no requirement that her statements be made with a reasonable degree of medical probability in order for them to be admissible. As for the neurological opinion, Gose states in her evaluation that "we are looking at nerve damage here."[25] It is unclear what the basis of this "conclusion" is, and the court will not consider it on motion for summary judgment.

### C. Batchelder Letter [26]

 Defendant moves to strike the Batchelder letter because it contains inadmissible hearsay, is not in compliance with Rule 26(a)(2)(B), is contrary to Batchelder's sworn testimony, and pertains to matters about which she is not competent to testify. Defendant's first two objections to the Batchelder letter fail for the same reasons these objections to the Gose exhibit failed. Plaintiff has disclosed Batchelder as an expert witness, and she may be able to testify about the contents of the letter based upon her personal knowledge at trial, provided plaintiff can resolve any Rule 26(a)(2)(B) problems there might be in connection with Batchelder's testimony before trial.

[16] Defendant also contends that the letter is contrary to Batchelder's sworn deposition testimony. In particular, defendant objects to the following sentence in the letter: "If speech services had been instituted immediately, after the healing of the broken jaw, it is likely that more compensatory strategies could have improved [plaintiff's] speech function."[27] Defendant argues that this is contrary to Batchelder's testimony at her deposition that speech therapy "to the extent of good speech ... would never have helped."[28]

These two statements are not contradictory. At her deposition, Batchelder testified that speech therapy would never have helped plaintiff have "good speech," and in the letter she states that speech therapy could have improved plaintiff's speech function. In the letter she did not say that speech therapy would have resulted in plaintiff having "good speech." She simply said that it could have improved plaintiff's speech function.

 Lastly, defendant objects to Batchelder's comments in the letter about rejuvenation of nerve growth because Batchelder is not a neurologist. There is nothing before the court that establishes that Batchelder is competent to testify about nerve rejuvenation, and this portion of the April 2, 2004 letter is stricken.

25. Exh. F at 2, doc. 40.

26. In a passing reference in its reply brief, defendant also appears to be asking the court to strike Batchelder's December 23, 2003 report (exh. E, doc. 40) as well. The court

declines to strike an exhibit on the basis of a passing reference in a reply brief.

27. Exh. D at 1, doc. 40.

28. Exh. C at 27, lns. 1–2, doc. 40.

## V. SUMMARY JUDGMENT MOTION

### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[29] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[30] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[31] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[32] However, the nonmoving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[33]

### B. Choice of Law

■ " 'It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state.' "[34]

In Alaska, when choice-of-law issues arise, the Alaska Supreme Court "refer[s] to the *Restatement (Second) of Conflicts* for guidance."[35]

### 1. First Claim for Relief

■ Because both medical malpractice and negligence claims are tort claims, the choice-of-law analysis would be the same regardless of which claim is asserted in plaintiff's first claim for relief. Section 145 of the *Restatement (Second) of Conflicts* governs the choice-of-law issue for torts and provides, in pertinent part, that

[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[36]

In order to determine which state has the "most significant relationship to the occurrence" the court considers

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.[37]

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."[38]

**29.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**30.** *Id.* at 323–25, 106 S.Ct. 2548.

**31.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**32.** *Id.* at 255, 106 S.Ct. 2505.

**33.** *Id.* at 248–49, 106 S.Ct. 2505.

**34.** *Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir.2005) (quoting *Ledesma v. Jack*

*Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987)).

**35.** *Palmer G. Lewis Co. v. ARCO Chemical Co.*, 904 P.2d 1221, 1227 (Alaska 1995).

**36.** *Restatement (Second) of Conflicts of Law* § 145(1) (1971).

**37.** *Id.* at § 145(2).

**38.** *Id.*

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[39]

Here, the place where the injury occurred was Arizona; the place where the conduct causing the injury occurred was Arizona; and the place where the relationship of the parties was centered was Arizona. The only relationship to Alaska is that plaintiff is an Alaska resident and was an Alaskan prisoner at the time of the accident. Arizona is the state with the more significant relationship and, thus, Arizona law applies to plaintiff's first claim of relief.[40]

### 2. Second Claim for Relief

■ Plaintiff's second claim for relief is a breach of contract claim. The contract between defendant and the State of Alaska, on which this claim is based, provides that the contract "shall be interpreted by the laws of the State of Alaska."[41] Section 187 of the *Restatement (Second) of Conflicts* provides, in pertinent part:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.[42]

The issue of whether inmates are third-party beneficiaries to the contract between defendant and the State of Alaska is one which could have been resolved by an explicit provision in the contract. Thus, Alaskan law, as chosen by the parties, applies to the breach of contract claim.

### C. Discussion

### 1. First Claim for Relief

■ As an initial matter, the court must decide whether plaintiff's first claim for relief is a medical malpractice claim or a negligence claim. Under Arizona law,

"[m]edical malpractice action" or "cause of action for medical malpractice" means an action for injury or death against *a licensed health care provider* based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services.... [43]

A "licensed health care provider" is defined as "[a] person, corporation or institution licensed or certified by the state to provide health care, medical services, nursing services or other health-related services...." [44] Defendant does not meet this definition. Although defendant contends that its Central Arizona Detention Center, where plaintiff was incarcerated, "is accredited by the National Commission of Correctional Health Care",[45] there is no evidence that defendant is licensed by the State of Arizona to provide health care or

---

**39.** *Id.* at § 146.

**40.** The court would note that plaintiff's approach to the choice-of-law issue, which was to brief his claims under both Arizona and Alaska law, was completely unhelpful. The court had hoped that both parties would actually brief the choice-of-law issue and not simply take the "we win regardless of which law applies" tack.

**41.** Exh. A at 65, sec. 9.8, doc. 46.

**42.** *Restatement (Second) of Conflict of Laws* § 187 (1971).

**43.** A.R.S. § 12–561(2) (emphasis added).

**44.** A.R.S. § 12–561(1)(a).

**45.** Docket 52 at 4.

medical services. Because defendant is not a "licensed health care provider," plaintiff would not be able to bring a medical malpractice claim against defendant, and plaintiff's first claim for relief must be treated as a negligence claim.

■ In Arizona, to prevail on a negligence claim, a plaintiff must prove 1) that the defendant owed the plaintiff a duty, 2) that the defendant breached that duty, 3) that the plaintiff's injury was proximately caused by the breach, and 4) actual loss or damages.[46] Here, plaintiff alleges that defendant breached its duty to provide plaintiff with reasonable medical care while incarcerated by not allowing him to see a speech therapist or a neurologist until approximately a year after his oral surgery. Plaintiff further alleges that his injury was exacerbated by this failure to provide prompt medical care. Allegations that a delay in treatment caused a prisoner's condition to worsen can support a negligence claim in Arizona.[47]

### a. duty

There is no dispute that defendant had a duty to provide plaintiff with reasonable medical and dental care. Defendant admits that it had such a duty.[48]

### b. breach of duty

"Once the court determines that a duty exists, the next question is whether the defendant breached the standard of care established pursuant to the duty."[49] "In most cases, whether the defendant's conduct met the standard of care is a question for the trier of fact."[50] "In an ordinary negligence action, the standard of care imposed is that of the conduct of a reasonably prudent person under the circumstances."[51]

It is undisputed that plaintiff did not see a speech therapist or a neurologist until approximately a year after his oral surgery. In what may be an attempt to refute this undisputed fact, defendant contends that plaintiff saw numerous dentists after his oral surgery, all of whom explained to plaintiff that further treatment would not alleviate his speech problems. Defendant, however, provides no admissible evidence to support this contention. Defendant also complains that plaintiff has failed to provide any evidence as to what a reasonably prudent person would do under the circumstances of this case. Defendant appears to suggest that plaintiff will need to offer expert testimony on this issue.

The court is not convinced that evidence, much less expert testimony, on this issue is necessary, at least not at the summary judgment stage. For now, it is sufficient that plaintiff has come forward with evidence from which a reasonable fact-finder could conclude that defendant breached its duty to provide adequate and reasonable medical care. The fact that plaintiff did not see a speech therapist or a neurologist for almost a year after his oral surgery is sufficient evidence to create a genuine issue of material fact as to whether defendant breached its duty to provide reasonable and adequate medical care.

46. *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200, 204 (1983)

47. *See, e.g., Zuck v. State,* 159 Ariz. 37, 764 P.2d 772, 777 (1988) (prisoner brought negligence claim based on allegations that there had been serious delay in receiving prescribed medication and medical treatment).

48. Doc. 52 at 8.

49. *Lasley v. Shrake's Country Club Pharmacy, Inc.,* 179 Ariz. 583, 880 P.2d 1129, 1132 (1994).

50. *Id.*

51. *Id.*

### c. proximate cause

"The proximate cause of an injury is defined in Arizona as 'that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred.' " [52] "Defendant's act need not have been a 'large' or 'abundant' cause of the final result; there is liability if the result would not have occurred but for defendant's conduct, even if that conduct contributed 'only a little' to plaintiff's injuries.' "[53] "The question of proximate cause is usually for the jury and it is only when reasonable persons could not differ that the court" should enter summary judgment in the defendant's favor.[54]

Defendant argues that plaintiff has no evidence that his injury was exacerbated by defendant's conduct. Defendant points out that Batchelder, plaintiff's own expert, could not testify to a reasonable degree of medical certainty that defendant's conduct caused plaintiff's current speech impediment.[55] While this is correct, plaintiff's negligence claim is not based on allegations that defendant's conduct *caused* his speech problems. His claim is based on allegations that defendant's failure to provide prompt medical treatment exacerbated his condition. Defendant also points out that its expert, Dr. Michael Powers, has averred that earlier intervention by a speech therapist or a neurologist would not have had any impact on plaintiff's condition.[56]

Plaintiff has attempted to provide evidence that creates a genuine issue of material fact as to whether his condition might have been alleviated if he had received speech therapy sooner. He points to the April 4, 2002 letter, in which Batchelder writes: "If speech services had been instituted immediately, after the healing of the broken jaw, it is likely that more compensatory strategies could have improved [plaintiff's] speech." [57] However, at her deposition, Batchelder testified on this subject as follows:

A. Any time we have injury, once it heals, we have a small window where stimulation can sometimes help. So having [plaintiff] do certain oral motor exercises would maybe have helped somewhat. I wish I could say. I just don't know.

Q. All right. So you can't really say to any reasonable degree of probability that would have helped in this case, right?

A. No, I don't know. But I know if we had had a chance to do some work, there could have been some—there could have been some help.

Q. So what you're saying is that there was a possibility it might have helped him.

A. In a short window.

Q. But it's not more likely than not it would have helped him.

A. To the extent of good speech, it would never have helped.[58]

---

**52.** *Saucedo ex rel. Sinaloa v. Salvation Army,* 200 Ariz. 179, 24 P.3d 1274, 1278 (2001) (quoting *Robertson v. Sixpence Inns of Am., Inc.,* 163 Ariz. 539, 789 P.2d 1040, 1047 (1990)).

**53.** *Ontiveros,* 667 P.2d at 205 (quoting *Markiewicz v. Salt River Valley Water Users', Ass'n,* 118 Ariz. 329, 576 P.2d 517, 526 n. 6 (1978)).

**54.** *Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 706 P.2d 364, 370 (1985).

**55.** Exh. C at 26–27, doc. 46.

**56.** Exh. C at 3, ¶¶ 13–16, Defendant's Separate Statement of Facts, doc. 46.

**57.** Exh. D at 1, doc. 40.

**58.** Exh. C at 26, In. 10 through 27, In. 2, doc. 40.

In essence, Batchelder has testified that while it is possible earlier intervention could have helped, she cannot say that it probably would have helped. Batchelder also testified that she would *probably* defer to Dr. Power's opinion that earlier speech therapy would not have alleviated plaintiff's condition because Dr. Power is a board certified neurologist.[59] While she did not say that she definitely would defer to him, her own inability to offer a contrary opinion dooms plaintiff's effort to show that there is a genuinely disputed issue of material fact with respect to causation. In sum, Batchelder's testimony is not sufficient to create a genuine issue of material fact as to proximate cause in the face of the evidence from Dr. Powers. Given the evidence in the record, reasonable persons could not differ. There is no genuine dispute of material fact concerning proximate cause.

### d. actual loss or damages

Neither party addresses this prong of the negligence test. However, it appears that there could be no dispute that plaintiff would be able to prove some actual damages, if he were able to establish the other elements of his negligence claim.

### 2. Second Claim for Relief

In his second claim for relief, plaintiff alleges a breach of contract claim based on his alleged status as a third-party beneficiary. "Before a third party right in a contract will be recognized, the parties to the contract must intend that at least one purpose of the contract is to benefit a third party."[60] "The motives of the parties, including those of the promisee, are determinative."[61] Alaska courts rely on the *Restatement (Second) of Contracts* § 302 when determining whether a party is entitled to third-party beneficiary status.[62] Section 302 provides, in pertinent part:

a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.[63]

An incidental beneficiary is a "beneficiary who is not an intended beneficiary."[64] "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."[65]

Plaintiff argues that he is a third-party beneficiary of the contract because there is language in the contract that manifests such an intent. Plaintiff points to the provisions in the contract that read:

J) All Prisoners shall be entitled to necessary medical, dental, and mental health services comparable in quality to those available to the general public. CADC shall utilize the most cost effective method of treatment to meet neces-

---

**59.** *Id.* at 27, lns. 7–17.

**60.** *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980).

**61.** *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997).

**62.** *Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150, 154 (Alaska 1984).

**63.** *Restatement (Second) of Contracts* § 302(1) (1981).

**64.** *Id.* at § 302(2).

**65.** *Id.* at § 313, cmt. a.

sary medical needs whenever possible; however, the primary basis for any medical decision shall be medical necessity and not cost.

K) The CADC shall provide those health care services which are required to alleviate pain and suffering, including those procedures deemed necessary to aid in increasing the level of functioning throughout the Prisoner's sentence.... CADC will not deny medical care which is necessary to enable a Prisoner to participate in or benefit from rehabilitative services.[66]

Plaintiff insists that this language creates a contractual duty on the part of defendant to provide adequate and reasonable health care to prisoners. Plaintiff concedes that the primary intention of the parties in forming the contract might not have been to benefit prisoners, but argues that as long as the parties intended *one* of the benefits to be for the prisoners, he is a third-party beneficiary. Plaintiff argues that he cannot be considered merely an incidental beneficiary when the express contract language gives him a right "to necessary medical, dental, and mental health services comparable in quality to those available to the general public." [67]

It is well established that, as a general rule, the public is treated as an incidental beneficiary of a public contract, such as the contract here. Although no Alaska case has ever considered this issue, cases from other jurisdictions are instructive. In *Liem Duc Nguyen v. United States Catholic Conference*,[68] the plaintiffs asserted that they were third-party beneficiaries of a contract between the Department of State and the defendant. The plaintiffs were refugees from Vietnam who relocated to the United States under the sponsorship of the defendant. The defendant had a series of "grant agreements" with the State Department under the terms of which the defendant received grant money from the State Department to help defray the cost of relocating refugees. Under the terms of the agreements, the defendant's responsibilities included:

(1) pre-arrival services such as providing information to a local sponsor or resettlement office, (2) reception services such as providing a food allowance and temporary accommodations, if necessary, (3) counseling and referral services in the areas of health and employment, and (4) consultation with public agencies which may also offer services to the resettled refugees.[69]

The plaintiffs alleged that the defendant had failed to provide them with the "basic essentials of life" and, thus, had breached the contract.[70] Specifically, the plaintiffs alleged that they were entitled to receive the unused portion of a $500.00 grant that was provided under the agreements for each refugee.[71] The court rejected the plaintiffs' argument because there was

no contractual provision which evinces an intent that the Catholic Conference will be liable to individual refugees in the event it fails to perform its contractual duties. The record is devoid of evidence showing that the agreements were to vest direct rights in individual refugees as third-party beneficiaries. Therefore, the refugees can only be considered incidental beneficiaries of the grant agreements.[72]

66. Exh. B at 26–27, doc. 40.

67. *Id* at 26.

68. 548 F.Supp. 1333 (W.D.Pa.1982).

69. *Id.* at 1337.

70. *Id.*

71. *Id.*

72. *Id.* at 1349.

In *Drummond v. University of Penn.*,[73] students and others brought suit against the defendant based on a contract it had with the City of Philadelphia to provide scholarships to students of Philadelphia Public Schools. The plaintiffs asserted that they were third-party beneficiaries to the contract. The court rejected this argument because there was no language in the contract that evinced an intent that "the University would be liable to members of the public for nonperformance or if they disagree with the interpretation of the agreements."[74]

Plaintiff insists that the instant case is distinguishable from *Liem Duc Nguyen* and *Drummond* because, here, the parties evinced an intent to provide proper medical care to prisoners. While that is correct, the parties did not evince an intent that defendant would be directly liable to the prisoners if it failed to provide them adequate medical care. Analytically, this case does not differ from *Liem Duc Nguyen* or *Drummond*. Just as in those cases, the contract in question here evinces no intent that defendant would be directly liable to the prisoners if it failed to perform under the contract. The contract sets forth many duties and responsibilities that defendant was to undertake for the benefit of the other party to the contract, the State of Alaska. The prisoners also benefited in some situations when defendant performed its contractual duties and obligations, as evidenced by the provisions of the contract to which plaintiff cites.

But, that does not mean that the prisoners had a right, under the contract, to demand performance by defendant.

Recognition of a right to performance in a third party would not be appropriate here because there is no evidence that defendant and the State of Alaska intended the prisoners to be third party beneficiaries.[75] Plaintiff was, at best, an incidental beneficiary of the contract. Defendant is entitled to summary judgment on plaintiff's second claim for relief.

## VI. CONCLUSION

As set forth above, defendants' motion to strike at docket 52 is **DENIED** in part and **GRANTED** in part to the extent set out in the preceding discussion.

For the reasons stated above, defendants' motion for summary judgment at docket 46 probably should be granted as to both plaintiff's first claim for relief and his second claim for relief.

---

**73.** 651 A.2d 572 (Pa.1994).

**74.** *Id.* at 579.

**75.** In light of there being no evidence that the parties intended the prisoners to be third-party beneficiaries, the court need not reach defendant's argument that there are strong public policy reasons for denying plaintiff's third-party beneficiary claim because plaintiff should not be able to assert that any aspect of his incarceration was for his benefit, as opposed to the public's benefit.