Byran PEROTTI, Appellant,

v.

CORRECTIONS CORPORATION OF AMERICA, Appellee.

No. S–13936.

Supreme Court of Alaska.

Dec. 14, 2012.

---

&#x1F511;89(1)

Byran Perotti, pro se, Seward, Appellant.

Daniel T. Quinn, Richmond & Quinn, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In this appeal we address the question whether monetary damages are available to a prisoner for violations of the terms of the 1990 judicial decree approving the *Cleary* Final Settlement Agreement. In 2004 appellee Corrections Corporation of America contracted with the State of Alaska to house Alaska inmates at Corrections Corporation's Red Rock Correctional Center in Eloy, Ari-

zona. Byran Perotti was an Alaska inmate at Red Rock. Perotti filed a complaint against Corrections Corporation alleging that Corrections Corporation violated provisions of its contract with the State, as well as various State Department of Corrections policies. He asserted standing as a third-party beneficiary to the contract between the State and Corrections Corporation. He based his standing argument on his status as a *Cleary* class member and the provisions of the *Cleary* Final Settlement Agreement, which settled the class action involving various inmate claims against the State of Alaska, Department of Corrections (DOC). Perotti's complaint sought liquidated damages under the DOC–Corrections Corporation contract, as well as compensatory damages, nominal damages, and punitive damages.

Because the *Cleary* Final Settlement Agreement does not contemplate the award of monetary damages to enforce its provisions, we affirm the superior court's decision granting Corrections Corporation's motion for summary judgment and dismissing all of Perotti's claims.

## II. FACTS AND PROCEEDINGS

In 1990 the State of Alaska, Department of Corrections and a class of prisoners reached a court-approved settlement, effectuated by judicial decree, known as the *Cleary* Final Settlement Agreement. It detailed the rights of current and future prisoners held in facilities owned or operated by the DOC.[1]

The *Cleary* Settlement provides that when overcrowding occurs, DOC must report to the superior court and present a plan to reduce the prison population. In 1995 DOC initiated a plan that sought to move prisoners to a private correctional facility in Arizona, operated by Corrections Corporation of America, Inc.[2] The superior court approved that plan, conditioned on the private prison's compliance with the *Cleary* Settlement.[3]

In 2004 DOC entered into a new contract with Corrections Corporation to place Alaska prisoners in its Red Rock Correctional Center. The contract covers many of the same topics as those in the *Cleary* Settlement. The contract is a 101–page document covering all the work "to be performed, completed and managed" at Red Rock, including "all facility, staff, prisoner transport, . . . food, prisoner medical and mental health treatment, [and] education."[4]

Byran Perotti was an Alaska inmate housed at Red Rock Correctional Center. In August 2007 Perotti was removed from the general prison population and placed in segregation pending an investigation of possible possession of escape paraphernalia. Perotti's administrative segregation lasted for four and a half months. Warden Frank Luna then increased Perotti's custody classification to "maximum" and ended his time in administrative segregation. But because his custody classification was increased, the practical outcome was that Perotti remained in segregated housing.

While segregated, Perotti faced a range of restrictions, which isolated him, increased officer coverage over him, and required removal of his personal possessions. Perotti was restricted from using the telephone, accessing the law library and typewriter, having contact visits, and visiting with certain inmates. He was also subjected to random strip searches.

Perotti filed a complaint with 17 claims against Corrections Corporation, nine of which alleged that Corrections Corporation had violated its contract with DOC during Perotti's time in administrative segregation.[5]

---

1. We refer to the settlement and judicial decree as the *Cleary* Settlement.

2. *Smith v. Cleary*, 24 P.3d 1245, 1247 (Alaska 2001).

3. *Id.* at 1247, 1250–51.

4. 2004 Contract, Corrections Corporation and DOC, Contract # 205–4861.

5. In his first nine causes of action, Perotti claimed that Corrections Corporation violated Sections 1.16, 3.30, and 4.03(I) of its contract with DOC which was entered into by the parties in 1994 and extensively revised in 2004. In Section 1.16 of the contract, Corrections Corporation agreed that it would comply with "the laws of the State of Alaska and any regulations issued thereunder." In Section 3.30, Corrections Corporation agreed not to "deprive any prisoner of legal right[s] which he would have if

In five of Perotti's remaining claims, he alleged that Corrections Corporation had notice of and violated DOC policies regarding administrative segregation, punitive segregation, prisoner grievances, and visitation. Perotti also alleged that Corrections Corporation had violated the indemnification clause of the contract, in which Corrections Corporation agreed to indemnify and defend the State against "any actions filed against it by a prisoner which challenge conditions of confinement operational policies, treatment by staff of other matters related to confinement at the Facility." And Perotti claimed that Corrections Corporation employees had acted to "violate and do harm to the rights and interests of the plaintiff." In his initial complaint, Perotti sought declaratory relief; injunctive relief through removal of certain Corrections Corporation employees; liquidated, compensatory, and punitive damages; return or replacement of property; and costs and expenses of the litigation.

Corrections Corporation moved for summary judgment arguing: (1) that Perotti lacked standing as a third-party beneficiary; (2) that even if Perotti had standing, he did not exhaust the administrative remedies available to him for most of his claims; (3) that Corrections Corporation·did not breach the contract; and (4) that Perotti had no recoverable damages. Superior Court Judge pro tem Peter Ashman requested supplemental briefing on the question whether Perotti was a third-party beneficiary to the contract in light of our decision in *Rathke v. Corrections Corporation of America, Inc.*, in which we concluded that DOC still owed "legal duties to all Alaska inmates . . . detailed in the *Cleary* [Settlement]."[6] Specifically, Judge Ashman asked the parties to provide briefing on: (1) the status of the *Cleary* Settlement; (2) whether Alaska prisoners retain rights under the *Cleary* Settlement; (3) whether DOC has authority to enter into contracts that avoid or supersede the *Cleary* Settlement requirements; and (4) whether a

private entity contracting with DOC can enforce contract terms that avoid or supersede *Cleary* Settlement requirements.

The case was reassigned to Superior Court Judge Frank A. Pfiffner, who granted summary judgment to Corrections Corporation, dismissing all of Perotti's claims. The superior court did not reach the question whether Perotti, as a member of the *Cleary* Settlement, was a third-party beneficiary under the contract. Instead, it found that most of Perotti's claims could be dismissed because Perotti had failed to exhaust his administrative remedies. For the remaining claims, the superior court concluded that Perotti had no recoverable damages because Perotti was not an intended third-party beneficiary to the liquidated damages provision of the contract and because the Alaska Prison Litigation Reform Act, AS 09.19.200, barred Perotti's claims for prospective relief. Finally, the superior court determined that Perotti was not entitled to compensatory damages because he had not "alleged or shown" any potential damages and that punitive damages were not recoverable for breach of contract unless the breach is a tort. In determining that Perotti was not entitled to punitive damages, the superior court reasoned that "Perotti ha[d] not asserted a tort claim."

Perotti appeals, claiming that he is a third-party beneficiary to the Corrections Corporation contract with DOC, that he did exhaust his administrative remedies, that AS 09.19.200 does not apply to his suit, and that his claims were erroneously dismissed. He argues that he is entitled to all categories of damages, including contractual liquidated damages, compensatory damages, nominal damages, and punitive damages.

## III. STANDARD OF REVIEW

 Grants of summary judgment are

---

confined in a State of Alaska managed facility." And in Section 4.03(I), Corrections Corporation agreed to follow Alaska DOC Policies.

Two months after Perotti filed his complaint, in June 2008, Corrections Corporation and Alaska added an amendment to the contract which expressly denied any third-party benefit, stating

that it "is not intended, and shall not be deemed or construed, to confer any rights, powers, benefits or privileges on any person or entity other than the parties to this Contract."

**6.** 153 P.3d 303, 311 (Alaska 2007).

reviewed de novo.[7] We will affirm a grant of summary judgment if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law.[8] When making this determination, we draw all reasonable inferences in favor of the non-moving party.[9]

Whether appellant is a third-party beneficiary of the contract is a question of contract interpretation to which we apply our independent judgment.[10] "We may affirm a grant of summary judgment on any basis appearing in the record."[11]

## IV. DISCUSSION

In his complaint, Perotti sought damages, declaratory relief, and injunctive relief, including the removal of certain Corrections Corporation employees from their duties. Although the superior court granted summary judgment in favor of Corrections Corporation based on Perotti's failure to exhaust his administrative remedies for most of his claims, it concluded (and Corrections Corporation concedes) that Perotti did exhaust his administrative remedies on his claims regarding telephone restriction and law library access. But the superior court concluded that no relief was available to Perotti on the claims for which he had exhausted his administrative remedies because Perotti had not demonstrated any compensable injuries. It also ruled that the Alaska Prison Litigation Reform Act[12] barred Perotti's claims for pro-spective injunctive relief. Finally, the superior court concluded that Perotti had no valid claim for punitive damages because he had not asserted any tort claims.

We affirm the superior court on the ground that none of the damages Perotti seeks as a third-party beneficiary to the contract between Corrections Corporation and DOC are available to him as a *Cleary* class member. Because we conclude that Perotti is not entitled to damages for any of his breach of contract claims, we do not need to decide whether he exhausted his remedies for any of his other claims.[13] And we affirm the superior court's determination that there were no punitive damages on the ground that Perotti did not assert a cognizable tort claim.

### A. Perotti Is Not Entitled To Compensatory Or Nominal Damages For Violations Of The *Cleary* Settlement.[14]

As a *Cleary* class member, Perotti relies on *Rathke v. Corrections Corporation of America, Inc.* to assert standing as a third-party beneficiary to those contract provisions between Corrections Corporation and DOC that were imported from the *Cleary* Settlement. Perotti claims that as a third-party beneficiary to those provisions, he is entitled to enforce violations of the contract through traditional contract remedies. He maintains that at the very least he is entitled to nominal damages for violations of the contractual

7. *Midgett v. Cook Inlet Pre–Trial Facility,* 53 P.3d 1105, 1110 (Alaska 2002).

8. *Id.*

9. *Id.*

10. *Jackson v. Barbero,* 776 P.2d 786, 788 (Alaska 1989).

11. *DeNardo v. GCI Commc'n Corp.,* 983 P.2d 1288, 1290 (Alaska 1999).

12. AS 09.19.200.

13. Perotti argues that he has either exhausted his administrative remedies for his claims or is excused because exhaustion would have been futile. While we do not need to reach the question whether Perotti exhausted his administrative remedies for all of his individual claims, we

nevertheless note that Corrections Corporation's screening out of several of Perotti's claims may have been improper. The Facility Standards Officer stated he screened out grievances because they were frivolous or excessive, but these grounds are not listed among the 14 reasons why a grievance may be screened out under DOC Policy 808.03(VII)(d)(3)(a)-(n).

14. Perotti also makes several claims for declaratory and injunctive relief, including the removal of two Red Rocks Correctional Center employees, the return or replacement of personal papers, and various declarations of wrongdoing. To the extent that he is seeking a declaration that the contract has been violated in order to receive damages, Perotti merely restates his claims for damages dealt with above. The remainder of his claims are moot because Perotti is no longer in the custody of Corrections Corporation, and he does not have standing to demand the termination of a correctional officer in any case.

provisions that are based on the *Cleary* Settlement provisions.

In *Rathke*, we relied on Section 302 of the Restatement (Second) of Contracts to determine that prisoners are intended third-party beneficiaries to a contract between Corrections Corporation and DOC if the language in the contract was taken directly from the *Cleary* Settlement or if the *Cleary* Settlement was incorporated by reference into the contract.[15] Under this section of the Restatement (Second) of Contracts, the parties to a contract must intend that a third party is a beneficiary of the contract:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.[16]

In *Rathke*, we concluded that prisoners were third-party beneficiaries to the contract with Corrections Corporation of America because substantial sections of the contract were similar to the *Cleary* Settlement and because the *Cleary* Settlement was incorporated by reference into the contract: [17]

> [P]ortions of the discipline section of the state/[Corrections Corporation] contract ... are virtually identical to the *Cleary* [Settlement].... Given this identity of provisions between the [*Cleary* Settlement] and the state/[Corrections Corporation] contract, we conclude that the prisoners

are intended third-party beneficiaries of the portions of the contract which are taken directly from the [*Cleary* Settlement].[18]

We also noted that preventing prisoners from suing Corrections Corporation for violations of the *Cleary* Settlement would deny them "direct redress against the very institution charged with their day-to-day care and discipline." [19] But the question remains whether the remedy of monetary damages is available for violation of the *Cleary* Settlement's terms.

 In determining the status of third-party beneficiaries under a contract, "[t]he motives of the parties ... are determinative." [20] We examine the parties' objective intent rather than their subjective motives.[21] "As a general rule, if the promised performance is rendered directly to the beneficiary, the intent to benefit the third party will be clearly manifested." [22] Here, Perotti claims an interest in the contract as a *Cleary* class member and claims the benefits of the terms of the *Cleary* Settlement that were incorporated into the contract with Corrections Corporation. Thus, Corrections Corporation and the State intended to vindicate Perotti's interests as a *Cleary* class member only to the extent that his interests are articulated in the *Cleary* Settlement.

 To determine what relief is available to prisoners under the *Cleary* Settlement, we look to basic contract principles. We have previously construed the *Cleary* Settlement as "following normal principles of contract interpretation." [23] The goal of contract interpretation is to "determine and enforce the reasonable expectations of the parties." [24] "The parties' expectations are

---

**15.** *Rathke v. Corr. Corp. of Am., Inc.*, 153 P.3d 303, 310–11 (Alaska 2007).

**16.** Restatement (Second) of Contracts § 302(1) (1979).

**17.** *Rathke*, 153 P.3d at 311.

**18.** *Id.*

**19.** *Id.*

**20.** *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997) (citing *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980)).

**21.** *Rathke*, 153 P.3d at 310 (citing Restatement (Second) of Contracts § 302 cmt. b (1979)).

**22.** *Id.* (internal quotation marks omitted) (citing 13 Richard A. Lord, Williston on Contracts § 37:8 (4th ed. 2000)).

**23.** *Hertz v. State, Dep't of Corr.*, 230 P.3d 663, 669 (Alaska 2010).

**24.** *Norville v. Carr–Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004).

assessed by examining the language used in the contract, case law interpreting similar language, and relevant extrinsic evidence, including the subsequent conduct of the parties."[25]

■ The *Cleary* Settlement is quite specific in describing the means by which it will be enforced. The settlement agreement contains a section detailing the method by which compliance with terms of the agreement is to be supervised by a standing compliance Monitor.[26] In the section entitled "Future Monitoring, Modification And Enforcement Of This Agreement," the agreement addresses the available enforcement remedies for actions "seeking enforcement, modification or interpretation" of the agreement, as well as actions seeking "to hold the Department [of Corrections] in contempt for alleged violations of this agreement." The agreement details the circumstances under which DOC will be held in contempt for violations of the agreement.[27] Significantly, this enforcement provision contains no mention of the payment of compensatory or nominal monetary damages for violations.[28] Because the *Cleary* Settlement does not generally contemplate an award of monetary damages for violations of the settlement, Perotti is not entitled to such damages as a third-party beneficiary of the *Cleary*-based provisions in the contract between DOC and Corrections Corporation.[29] We emphasize that this holding is limited to prisoner claims for monetary damages for an institution's failure to abide by the *Cleary* Settlement; it does not, for example, limit a prisoner's ability to seek compensatory monetary damages in tort for injuries sustained while housed in a correctional institution.[30]

25. *Id.* (quoting *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996)).

26. The *Cleary* Settlement states that the superior court will decide the need for continued active oversight after the report of the Monitor. In 2001 the superior court received a report from the Monitor that the issues addressed by the *Cleary* litigation had been resolved, and decided that continued judicial oversight was unnecessary. *Cleary v. Smith*, No. 3AN–81–05274 CI (Alaska Super., July 3, 2001).

27. The relevant language reads:

Actions seeking to hold the Department in contempt for alleged violations of this agreement shall be guided by the principle that isolated instances of noncompliance which do not reflect a pattern or practice of violations do not justify a finding of contempt except in situations where unjustified intentional violations are established. A pattern or practice of violations is established by a showing of repeated violations as to a particular inmate or inmates. *Cleary Final Settlement and Order* § IX. B. 3.

28. The *Cleary* Settlement does include at least one term that may lend itself to a specific claim for monetary damages. The *Cleary* Settlement directs payment of gate money to prisoners who leave the facility. *Cleary Final Settlement and Order* § VI. J. In *Hertz v. State, Department of Corrections*, we left open the question whether a released prisoner who has been denied this gate money has a damage claim for past failure to pay these funds under the *Cleary* Settlement. *Hertz*, 230 P.3d 663, 668 n. 24 (Alaska 2010). We do not decide this question today, but we note that, in contrast to Perotti's claims for damages, there is a clear and precise measure of monetary damages for a violation of the gate money provision of the *Cleary* Settlement. And if monetary damages were determined to be an appropriate remedy against DOC for such a claim, then under *Rathke,* a third-party beneficiary to the contract between DOC and Corrections Corporation could potentially enforce this same right against Corrections Corporation, if that contract had a similar gate money provision. *See Rathke v. Corr. Corp. of Am., Inc.,* 153 P.3d 303, 310–11 (Alaska 2007). We also point out that in *Hertz,* we held that "either party may move for relief from the [*Cleary* Settlement]," and that the settlement "gives broad discretion to the trial court to modify the agreement in the event of changed law or circumstances." *Hertz,* 230 P.3d at 669. But it appears that DOC may have unilaterally vacated the gate money provision of the *Cleary* Settlement without the necessary court approval. *See id.* at 664–68. We do not reach the validity of that action in this appeal.

29. As a third-party beneficiary of the contract between DOC and Corrections Corporation, Perotti must stand in the shoes of DOC in an action to enforce the agreement against Corrections Corporation. *See State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980). Thus, Perotti may receive only the relief available to the contracting parties.

30. *See, e.g., Hertz v. Beach,* 211 P.3d 668, 682 (Alaska 2009) (reversing a grant of summary judgment on a medical malpractice claim against a prison dentist); *Kanayurak v. North Slope Borough,* 677 P.2d 893, 899 (Alaska 1984) (holding that a duty of care is owed even to prisoners who injure themselves); *Wilson v. City of Kotzebue,* 627 P.2d 623, 628 (Alaska 1981) (holding that prisoners are owed a duty of care comparable to

## B. Perotti Is Not Entitled To Liquidated Damages.

 Perotti also claims that as a *Cleary* class member and third-party beneficiary to DOC's contract with Corrections Corporation, he is entitled to enforce the liquidated damages clauses in the corrections contract.[31] But as we have reasoned in the context of Perotti's claim for compensatory and nominal damages, any finding under the *Rathke* standard that Perotti is a third-party beneficiary would only entitle him to the rights that he is owed by DOC under the *Cleary* Settlement. Because the *Cleary* Settlement does not contain any provision for liquidated damages for violations of the agreement, and instead contemplates enforcement by a contempt order, Perotti is not entitled to liquidated damages.

Moreover, there is no indication that Corrections Corporation or DOC intended to extend the liquidated damages section to Perotti under the contract. In determining the status of third-party beneficiaries under a contract, "[t]he motives of the parties ... are determinative."[32] We examine the parties' objective intent rather than their subjective motives.[33] "As a general rule, if the promised performance is rendered directly to the beneficiary, the intent to benefit the third party will be clearly manifested."[34]

For example, in *Howell v. Ketchikan Pulp Co.*, a subcontractor claimed that he was a third-party beneficiary of a contract between Ketchikan Pulp Co. and his employer.[35] The contract contained an indemnification clause between Ketchikan Pulp Co. and the subcontractor's employer.[36] We concluded that the indemnification clause was intended to allocate between Ketchikan Pulp Co. and the employer any liability for claims by third parties, rather than to allow direct claims by third parties against Ketchikan Pulp Co.[37] We quoted approvingly the superior court's conclusion that

> [i]n this case it would be impossible for a reasonable jury to conclude that one of the purposes of the contract between General Electric and Ketchikan [Pulp Co.] was to benefit Steven Howell.... The [indemnity provisions] simply show efforts to reallocate liability between the two contracting parties—for their benefit—not that of third parties such as plaintiff.[38]

Thus, in *Howell*, we read the indemnification clause between the two primary parties to the contract as merely a way of allocating risk between them, not as expressing the intent that a third party would be able to sue on the contract. Similarly, the liquidated damages in the contract between DOC and Corrections Corporation are designed to reduce litigation costs between those parties. Perotti has made no showing that the liquidated damages clause was intended to benefit him.

Because third-party beneficiary status under *Rathke* only grants prisoners those rights that they would have had under the *Cleary* Settlement, Perotti cannot collect liquidated damages under the Corrections Corporation contract with DOC.

## C. Perotti Is Not Entitled To Punitive Damages.

 Perotti included two claims in his complaint alleging that individual employees were "negligent[ ]" and "beyond mere[ly] negligen[t]" in their conduct and that they acted "with the knowledge their actions

---

the duty of care owed by common carriers to passengers).

31. The liquidated damages clause of the contract states in relevant part: "Subject to the notice and cure provisions specified in this section 3.35, in the event of a Breach by contractor described in this section, the State may withhold as a liquidated damage the amounts designated in Appendix E from any amounts owed contractor." 2004 Contract, Corrections Corporation and DOC, Contract # 205-4861.

32. *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997) (citing *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980)).

33. *Rathke v. Corr. Corp. of Am., Inc.*, 153 P.3d 303, 310 (Alaska 2007) (citing RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. b (1979)).

34. *Id.* (internal quotation marks omitted) (citing 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 37:8 (4th ed. 2000)).

35. 943 P.2d at 1206.

36. *Id.*

37. *Id.* at 1207–08.

38. *Id.* at 1207.

would violate and do harm to the rights and interests of the plaintiff." Perotti describes the harm to his "rights and interests" as his "protectable property and contractual interest in the enforcement of the *Cleary* [Settlement]." Although the superior court concluded that Perotti failed to assert a tort claim, Perotti maintains that he alleged the tort of "intentional interference with a contract." But Perotti's allegation that Corrections Corporation employees interfered with his "protectable property and contract interest[s]," is merely a restatement of his argument that the contract between Corrections Corporation and DOC was breached and that he was a beneficiary of that contract. Although the Corrections Corporation employees' conduct, such as denying Perotti access to the law library, may have been in violation of the *Cleary* Settlement, that conduct does not, standing alone, constitute a separate tort upon which punitive damages could be based. And absent a cognizable tort, punitive damages are not recoverable for breach of contract.[39] Thus, Perotti is not entitled to punitive damages.

## V. CONCLUSION

For these reasons, we AFFIRM the judgment of the superior court.

CHRISTEN, Justice, not participating.

WINFREE, Justice, with whom STOWERS, Justice, joins, concurring.

WINFREE, Justice, with whom STOWERS, Justice, joins, concurring.

I agree with today's decision. I write separately to express my hope that we now have completed the third-party-beneficiary detour and are back on the road contemplated by the *Cleary* Settlement.[1]

As today's decision discusses, the 1990 *Cleary* Settlement detailed the prison-condition rights of current and future prisoners held in correctional facilities owned or operated by the State of Alaska, Department of Corrections (DOC). The settlement also provided that in the event of prisoner overcrowding, DOC was to report to the superior court and present a plan to reduce the prison population. After being held in contempt for exceeding the allowable prison population, DOC sought to transfer prisoners to a private correctional facility in Arizona.[2] The superior court ultimately conditioned approval of the prisoner transfer on "the state's continued compliance with [the *Cleary* Settlement] in the Arizona prison."[3] This court affirmed the superior court's order as within its broad discretion under the *Cleary* Settlement,[4] emphasizing that although the settlement provisions were a binding final judgment on DOC, material changes in circumstances could lead to vacation or modification and that future implementation and enforcement would be based on the *Cleary* Settlement's intent in light of then-existing conditions.[5]

In obvious response to the condition imposed by the superior court, DOC's contract

39. *Reeves v. Alyeska Pipeline Serv. Co.,* 56 P.3d 660, 671 (Alaska 2002) ("[W]e follow the Restatement's position that '[p]unitive damages are not recoverable' for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." (quoting RESTATEMENT (SECOND) OF CONTRACTS § 355 (1979))).

1. *Cleary v. Smith,* No. 3AN–81–05274, Final Settlement Agreement and Order (Alaska Super., Sept. 21, 1990).

2. *Smith v. Cleary,* 24 P.3d 1245, 1247 (Alaska 2001).

3. *Id.* at 1250.

4. *Id.* at 1249–51.

5. *Id.* at 1249, 1251. It nonetheless appears DOC has unilaterally modified at least one aspect of the *Cleary* Settlement without seeking court approval—DOC no longer honors the *Cleary* Settlement provision requiring payment of gate money to released prisoners. *See Cleary v. Smith,* No. 3AN–81–05274, Final Settlement Agreement and Order § VI.J (Alaska Super., Sept. 21, 1990); *cf. Hertz v. State, Dep't of Corr.,* 230 P.3d 663, 664–65, 668 (Alaska 2010) (holding DOC's decision to stop issuing gate money as required by *Cleary* Settlement was not proper subject of action for prospective injunctive relief by individual prisoner in light of Alaska Prison Litigation Reform Act (AS 09.19.200)). The efficacy of DOC's unilateral modification of the *Cleary* Settlement has not come before us.

with the Arizona prison facility included a number of prison-condition provisions mirroring the *Cleary* Settlement.[6] An Alaska inmate in the Arizona facility then sued the facility on a breach of contract theory, asserting third-party-beneficiary status under DOC's contract with the Arizona facility.[7] The superior court dismissed the claim, concluding that the prisoner had rights under the *Cleary* Settlement but was not a third-party-beneficiary of DOC's contract with the facility.[8] This court reversed, concluding that Alaska prisoners in the Arizona facility were third-party-beneficiaries of the DOC contract terms incorporating the prison-condition provisions in the *Cleary* Settlement.[9] The court believed this conclusion was required to ensure "redress against the very institution charged with their day-to-day care and discipline,"[10] and held that the prisoner had the right to sue the Arizona facility for violations of the *Cleary* Settlement provisions in the contract.[11]

It seems unlikely that DOC inserted the *Cleary* provisions in the contract with the private prison to benefit inmates—it is far more likely that DOC inserted those provisions to protect itself from liability for violations of the *Cleary* settlement.[12] It also seems unlikely that this court intended prisoners in the Arizona facility to have more

enforcement rights under the *Cleary* Settlement than prisoners in DOC's facilities, and the court did not discuss how it envisioned third-party-beneficiary enforcement or the remedies that might be available. But after today's decision it should be clear that the enforcement mechanism for prison conditions mandated by the *Cleary* Settlement is the settlement agreement itself, and that regardless of prisoner location, prisoners' enforcement rights should be against DOC, not a direct action against a particular facility or its staff.

DOC owes all Alaska prisoners legal duties under the *Cleary* Settlement, and facility compliance with the *Cleary* Settlement is DOC's responsibility.[13] If a DOC facility or a private contracting facility outside of Alaska is not in compliance with the *Cleary* Settlement's prison-condition provisions, then, as today's decision recognizes, DOC should be subject to contempt sanctions or injunctive relief under the *Cleary* Settlement, in the *Cleary* case before the superior court.[14] In my view *Rathke*'s holding regarding third-party-beneficiary status is infirm at best, but now has little import in light of today's decision.[15] The result is the same—Perotti has no claim for damages against the Arizona facility or its employees for alleged violations of the prison-condition provisions of the

6. See *Rathke v. Corr. Corp. of Am., Inc.*, 153 P.3d 303, 309–11 (Alaska 2007).

7. *Id.* at 307, 309–11.

8. *Id.* at 307, 311.

9. *Id.* at 311.

10. *Id.*

11. *Id.*

12. See, e.g., *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 284 (Alaska 2012) (addressing third-party beneficiary status in insurance contract context and explaining that "[t]he insured did not purchase the policy with the intention to benefit the tort victim; rather, the insured purchased the policy to protect the insured from tort liability. Thus, the tort victim is only an incidental beneficiary").

13. *Rathke*, 153 P.3d at 311 ("The state owes legal duties to all Alaska inmates, including those housed like Rathke at the CCA's Florence, Ari-

zona, facility. These duties are detailed in the *Cleary* [Settlement] ....").

14. I do not foreclose the possibility of a separate direct cause of action against DOC for breach of specific terms of the *Cleary* Settlement providing for payments to be made to prisoners. See, e.g., *Cleary v. Smith*, No. 3AN–81–05274, Final Settlement Agreement and Order § VI.J (Alaska Super., Sept. 21, 1990) (providing for payment of gate money to released prisoners); cf. *Hertz*, 230 P.3d at 668 (holding inmate not entitled to prospective injunctive relief regarding gate money).

15. I do not foreclose the remote possibility that DOC would enter into a contract with a prison facility outside of Alaska that requires the facility to fulfill the *Cleary* Settlement mandate for payment of gate money, in which case prisoners likely would be third-party-beneficiaries of that contract provision. Such a provision is not in the prison contract in this case, and, in light of DOC's decision to not honor the *Cleary* Settlement provision for payment of gate money, it seems unlikely that such a provision would find its way into a subsequent contract.

*Cleary* Settlement. Although today's decision did not need to reach the question of injunctive relief against the Arizona facility, a similar result seems logical.